67530. SHEARSON/AMERICAN EXPRESS, INC. v. HARDY.

McMURRAY, Chief Judge.

Plaintiff, Shearson/American Express, Incorporated, f/k/a Shearson Loeb Rhoades, Incorporated, a brokerage firm, filed this action against defendant to recover an alleged deficit in defendant's commodities trading account. Defendant Hardy filed his answer and counterclaim, alleging breach of contract, fraud, negligence and the "churning" of defendant's account by plaintiff.

Defendant originally opened an account in late 1979 as a client of another commodities broker. In June of 1980, this broker informed defendant that he was going to become employed by plaintiff and asked defendant if he wished to transfer his account. Subsequently, defendant opened the account in question with plaintiff.

The records of defendant's account with plaintiff show that after some initial success defendant began losing substantial sums, finish-

ing 1980 with a loss of approximately $49,000. The losses continued to occur in 1981 (defendant briefly closed his account on March 2, 1981, after losing approximately $80,000, but soon thereafter resumed trading).

In the last week of June 1981, defendant met margin calls with four checks which were returned marked "uncollected funds." After further unsuccessful attempts to collect the funds represented by the checks plaintiff liquidated defendant's account producing a final deficit of $73,750 for which plaintiff brought suit.

The jury returned a verdict in favor of defendant in the amount of $31,238.50 on his counterclaim. Following denial of its motion for judgment notwithstanding the verdict, or, in the alternative, for new trial, plaintiff appeals. *Held*:

1. Plaintiff's first three enumerations of error address the sufficiency of the evidence to support the jury's verdict and the trial court's denial of plaintiff's motion for directed verdict. Plaintiff's argument is primarily directed to the evidence, or lack thereof, concerning the "churning" of defendant's account. "Churning" is excessive trading of an account for the purpose of generating fees for an investment broker remunerated on a commission basis. "Churning" may have occurred where "an investor proves that: (1) the trading in his account was excessive in light of his investment objectives; (2) the broker in question exercised control over the trading in the account; and (3) the broker acted with the intent to defraud or with willful and reckless disregard for the investor's interests." Miley v. Oppenheimer & Co., 637 F2d 318, 324 (1, 2).

Defendant, a farmer, testified that he first opened a commodities trading account as a client of the broker (at that time with another brokerage firm), intending only to hedge his production of hogs, but was convinced by the broker to make purchases of hog contracts (a speculative transaction for a producer). Thereafter, this broker changed his employment to plaintiff, and the speculative transactions continued, although defendant testified that at that time he did not understand that the transactions were speculative or that there was a risk of losing substantial sums of money until August 29, 1980, when such occurred in regard to a trade transacted through plaintiff. Defendant testified in regard to subsequent profitable trades that he continued to fail to realize that the transactions being conducted in his account were speculative until March or April of 1981, but that he continued to rely on the expertise of the broker who sometime guaranteed the success of specific transactions.

Defendant's expert testified that the purchases of commodity contracts for defendant's account were speculative (a hedge transaction would have involved the sale of hog contracts) and that most of the transactions, including the initial transaction, in defendant's ac-

count with plaintiff were purchases. The expert also testified as to his opinion, derived from conversations with defendant, as to defendant's low level of knowledge and expertise as to commodities trading. Finally, defendant's expert testified that in his opinion the frequency of trades executed in defendant's account was excessive (plaintiff earned a fee from each trade) when considered in relation to the equity in the account.

Although defendant's account was purportedly a non-discretionary account, defendant testified that the broker executed a number of trades without authorization. Defendant testified that the first unauthorized purchase occurred on December 12, 1980, but that he did not learn of the transaction until December 31, 1980. Some of the unauthorized purchases resulted in losses to defendant's account. Defendant testified that: "I didn't complain real hard to him [the broker] because I didn't really want to get him real, real mad with me because if I ever decided to trade with him later, you know, he may burn me again, I mean, sure enough." Additionally, the evidence as to defendant's lack of expertise and consequential reliance upon the advice of the broker would also suggest control of the account by plaintiff. Such control as is required for a finding of "churning" need not amount to a formal vesting of discretion in the broker. It is sufficient that the client routinely follows all advice of the broker. See Hecht v. Harris Upham & Co., 283 FSupp. 417, 432-433 (12), (13); Mihara v. Dean Witter & Co., 619 F2d 814, 821 (4).

Defendant's evidence as to plaintiff's handling of his account authorized the jury to infer that the broker and his principal (the plaintiff) acted with reckless disregard for defendant's investment concerns. Sufficient evidence was presented on behalf of defendant to authorize the jury verdict and the denial of plaintiff's motion for directed verdict.

Accepting for the moment that defendant's testimony, on which his case heavily relied, was in some regards inconsistent and contradictory, such did not remove from the jury the task of determining the credibility of defendant. *Fulmer v. State*, 74 Ga. App. 298 (2), 299 (3) (39 SE2d 732); *Gilreath v. State*, 247 Ga. 814, 832 (14) (279 SE2d 650).

2. Plaintiff's enumerations of error numbers 11 and 12, along with others, are predicated on evidence which shows that the contract under which defendant's brokerage account was opened provided that the account would be non-discretionary, that is, that plaintiff and its agent broker would trade in the account only upon explicit authorization by defendant. To the extent that plaintiff's argument relies upon this evidence and the proposition that such evidence was not contradicted, it is incorrect. Defendant presented evidence which shows that plaintiff through its agent (the broker) exercised de facto discretion-

ary control over defendant's account. Therefore, insofar as the jury instructions complained of in these enumerations of error present the applicable law, in the event the jury accepted defendant's evidence as to this issue, they were properly tailored to the evidence at trial.

Furthermore, in regard to enumeration number 11, we find no error in the trial court instructing the jury to consider in a "churning" case such factors as the amount of commissions in relation to the size of the account. Although plaintiff suggests that this relationship is not relevant to the issue of "churning" in a commodities account which due to its highly leveraged nature is more volatile, we believe that the evidence suggests that the volatility of commodities trading affects only the interpretation of the ratio derived rather than its validity.

3. Plaintiff's enumeration of error number 13 arises from the trial court sustaining defendant's objection to a question asked of plaintiff's witness (the manager of plaintiff's branch at which the commodities broker was employed) on direct examination. No statement was made to the court showing what the answer to the question would have been, thus there is nothing for us to review on appeal. *Zohbe v. First Nat. Bank, Cobb County*, 162 Ga. App. 604, 605 (2) (292 SE2d 444).

4. There was no error in the trial court permitting defendant's expert witness to respond to a question as to what would be indicated by getting out of the market with a small gain, by testifying that if the gain was so small as to not cover the brokerage commission the trade would be a losing trade. The testimony was not speculative as plaintiff argued but a mathematical certainty.

5. Plaintiff's remaining enumerations of error present nothing for review on appeal due to the absence of objections, statement of grounds for objections or failure to raise the issues at trial argued on appeal.

*Judgment affirmed. Deen, P. J., and Sognier, J., concur.*

DECIDED JULY 3, 1984.

R. Hal Meeks, Jr., Peter J. Anderson, David C. Jensen, for appellant.
*Will Ed Smith*, for appellee.